UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALENTINO NAPOLITANO,

                             Plaintiff,

-v-

TEACHERS COLLEGE, COLUMBIA
UNIVERSITY,

                             Defendant.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/13/2023

No. 19-cv-9515 (MKV)

OPINION & ORDER
DENYING
MOTION TO DISMISS

MARY KAY VYSKOCIL, District Judge:

      Plaintiff Valentino Napolitano alleges that Defendant Teachers College, a graduate school of Columbia University, retaliated against him after Napolitano complained that a supervisor made age-based discriminatory statements about fellow employees. Before the Court is a second motion to dismiss this case, which has been poorly lawyered on both sides at every stage of the litigation. For the reasons set forth below, the motion to dismiss is DENIED.

## I.    BACKGROUND[1]

### A. Facts

      Plaintiff Valentino Napolitano was employed by Defendant Teachers College, a graduate school of Columbia University ("Teachers College"). SAC ¶ 11. In the summer of 2014, Susan Joblanski, who was the Assistant Vice President of Facilities at the time, hired Napolitano as a steamfitter at Teachers College. SAC ¶ 14. Napolitano began work in September 2014. SAC ¶ 15. His direct supervisor was Brian Alford, Vice President of Facilities. SAC ¶ 14.

---

[1] The facts are taken from the Second Amended Complaint [ECF No. 42], hereinafter "SAC." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

1

Napolitano alleges that in "late 2014," Joblanski told Napolitano that she was dissatisfied with two other employees, "Shop Steward Waverly Cannady and employee Jerry White. SAC ¶ 16. A shop steward is a union representative. Napolitano alleges that Joblanski "stated '[White and Cannady] should not be there and should just retire.'" SAC ¶ 16 (alteration in original). Napolito alleges that Joblanski said she "needed to take action" and "made it clear" she "wanted to find a means of terminating" White because she believed he was too old for the job. SAC ¶ 16. Napolitano did not take any action at that time. *See* SAC ¶ 16.

On June 29, 2016, Napolitano overheard Joblanski talking about a plan to assign White challenging tasks and to issue White a citation if he failed to complete those tasks within thirty minutes. SAC ¶ 17. Napolitano then reported what he perceived as "Joblanski's discriminatory statements against White based on age" to Cannady. SAC ¶ 18. Specifically, Napolitano told Cannady that Joblanski "attempted to force White out because of his age." SAC ¶ 19. Cannady told Napolitano he would address the issue with Joblanski. SAC ¶ 19. The Human Resources Department of Teachers College documented Napolitano's complaint and submitted it to the Diversity Department. SAC ¶ 19.

Napolitano alleges that, upon learning of his complaint, Joblanski confronted and berated him. SAC ¶ 20. Joblanski allegedly told Napolitano that his "employment would not last if he continued such behavior." SAC ¶ 20. Joblanski allegedly directed Napolitano not to repeat what she had said. SAC ¶ 20.

On July 13, 2016, Napolitano met with a "Diversity Affairs Representative" to discuss Joblanski's allegedly discriminatory statements about White. SAC ¶ 21. At that meeting, he reported what he perceived as "Joblanski's threat of termination following his complaint." SAC ¶ 21. Then on July 25, 2016, Napolitano attended a meeting with representatives from Human

Resources and "discussed" the "resistance" of Teachers College "to address Joblanski's discrimination against White." SAC ¶ 23.

Napolitano alleges that, thereafter, from August 1, 2016 until his eventual termination on March 19, 2018, Teachers College engaged in a series of retaliatory actions to punish Napolitano for his complaint about age discrimination. Specifically, Napolitano alleges that, starting on August 1, 2016, Joblanski and Alford denied Napolitano overtime hours. SAC ¶ 25; *see* SAC ¶ 54. Napolitano also alleges that Alford directed him to perform tasks outside of his job description, including "HVAC tasks despite his title as steamfitter." SAC ¶ 58; *see* SAC ¶ 46. In addition, Napolitano alleges that Alford directed Napolitano to provide additional time sheets that no other employee was required to provide and that reflected information that was already available in the computer system. SAC ¶ 37.

Napolitano further alleges that Alford repeatedly directed him to work in unsafe or unsanitary conditions and falsely accused Napolitano of insubordination. *See, e.g.*, SAC ¶¶ 29, 30, 32, 33, 35, 38, 41, 62. For example, Napolitano alleges that, on October 6, 2016, Alford assigned Napolitano to a project "and intentionally failed to inform" Napolitano of "critical information," which "compromised his safety." SAC ¶ 29. Similarly, Napolitano alleges that, on October 25, 2016, Alford directed Napolitano to fix a ceiling leak but "refused to provide him with the appropriate safety equipment" for the job. SAC ¶ 32. Napolitano refused to perform the job because of "fear for his safety," and Alford allegedly "falsely accused Mr. Napolitano of improperly refusing a work order." SAC ¶ 32. Napolitano informed Human Resources and others that Alford was giving him unsafe assignments and then threatening to suspend him for failing to follow orders. *See* SAC ¶¶ 32, 33, 36.

Napolitano alleges that a number of other incidents and meetings took place in late 2016 and 2017. *See* SAC ¶¶ 42, 43–53, 55, 56. Teachers College suspended Napolitano for five days in October 2017 because of Alford's allegedly false accusations of insubordination. SAC ¶ 61. Napolitano received a ten-day suspension that took place in January 2018. SAC ¶ 63.

In March 2018, Teachers College "decided to conduct an investigatory meeting to determine the false accusations of insubordination against" Napolitano. SAC ¶ 68. Napolitano refused to sign the investigatory report because, he alleges, it contained false information. SAC ¶ 69. Napolitano was terminated on March 19, 2018. SAC ¶ 70.

### B. Procedural History

After he was terminated, Napolitano filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting "the same factual allegations" as he asserts in this lawsuit. SAC ¶¶ 4, 5. He "received from the EEOC a notice of right to sue, dated July 31, 2019." SAC ¶ 6. Napolitano also filed a complaint with another agency, the New York State Division of Human Rights. SAC ¶ 4.

On October 15, 2019, Napolitano initiated this action by filing the Original Complaint, alleging the facts described above [ECF Nos. 1, 5 ("Cmpl.")]. He asserted claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Administrative Code of the City of New York, §§ 8-101 *et seq.* ("NYCHRL"). Teachers College filed a pre-motion letter seeking leave to file a motion to dismiss the Original Complaint [ECF No. 14]. It argued, in part, that Napolitano's NYCHRL claim was barred by his action before the New York State Division of Human Rights [ECF No. 14 at 2]. Teachers College did not argue that Title VII does not cover age discrimination.

Napolitano filed the Amended Complaint, asserting a claim under Title VII only [ECF No. 19]. Teachers College responded with a motion to dismiss for failure to state a claim, which Napolitano opposed [ECF Nos. 22, 24, 27, 30]. Teachers College argued that Napolitano failed to allege a *prima facie* case of retaliation under Title VII because too much time separated Napolitano's alleged protected activity—that is, his complaint that a supervisor made age-based discriminatory statements about fellow employees—from any adverse employment action [ECF No. 24]. While Teachers College failed to make this argument, the Court dismissed the Amended Complaint for failure to state a claim under Title VII because age is not a protected category under Title VII [ECF No. 32 ("Opinion and Order")].

Thereafter, Napolitano sought leave file a second amended complaint, alleging the same facts that he had alleged in his earlier pleadings but, this time, asserting a claim under the Age Discrimination in Employment Act ("ADEA") [ECF No. 38]. Teachers College opposed the request for leave to amend, arguing that any amendment would be futile [ECF No. 39]. In particular, Teachers College argued that the ADEA claim would be time-barred. The Court granted leave to amend [ECF No. 39 at].

Napolitano filed the Second Amended Complaint [ECF No. 42]. Teachers College moves to dismiss the Second Amended Complaint [ECF Nos. 47, 48, 49 ("Def. Mem."), 51 ("Reply")]. It argues that Napolitano's ADEA claim is time-barred and that Napolitano fails to allege a *prima facie* case of retaliation. Napolitano opposes the motion [ECF No. 50 ("Opp.")].

## II.   LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and must draw all inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive

a motion to dismiss," the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.   DISCUSSION

1. <u>Napolitano's Case Is Not Time Barred.</u>

Although Teachers College tries to prevail on a technicality, it misstates the law. Teachers College argues Napolitano's ADEA claim is time barred because Napolitano did not file the Second Amended Complaint asserting an ADEA claim within 90 days of receiving his right-to-sue letter from the EEOC. Def. Mem. at 1, 8–10. Napolitano's case is not time barred.

In order to be timely, a "civil action" under the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter. 29 U.S.C. § 626(e); *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 126 (2d Cir. 2006). "The filing deadline," however, "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003), as amended (July 29, 2003). The Second Circuit has explained that tolling is "appropriate 'where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period.'" *Id.* (quoting *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002)); *accord Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (collecting cases).

In this case, Napolitano put the EEOC on notice of the alleged facts underlying his claim that Teachers College retaliated against him for complaining about age-based discrimination, and he received a right-to-sue letter from the EECO dated July 31, 2019. SAC ¶¶ 5, 6. Before the 90-day filing deadline, on October 15, 2019, Napolitano commenced a civil action alleging the same facts. *See* Cmpl. ¶¶ 5–7. But, as explained above, in the original complaint, Napolitano asserted

6

claims under Title VII and the NYCHRL. He then filed the Amended Complaint, asserting a Title VII claim only. *See* AC ¶¶ 72–79. The Court dismissed the Amended Complaint for failure to state a claim under Title VII because age is not a protected category under that statute, even though Teachers College failed to seek dismissal on that ground. *See* Opinion and Order at 6. The Court then granted Napolitano leave, over the objection of Teachers College, to file the Second Amended Complaint, asserting his claim under the ADEA [ECF Nos. 38, 39, 40, 41].

Citing a single, non-binding, unpublished opinion by a magistrate judge, Teachers College argues that the Court should dismiss the Second Amended Complaint—and the Court never should have permitted Napolitano to file it—because Napolitano failed to assert his claim under the ADEA within 90 days of receiving his right-to-sue letter. Def. Mem. at 8 (citing *Nash v. Human Development Services of Westchester*, 2003 WL 22871911, at *6 (S.D.N.Y. Dec. 4, 2003). That argument is foreclosed by precedent. Napolitano "actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96. Tolling is "appropriate" in precisely this circumstance. *Zerilli-Edelglass*, 333 F.3d at 80.

Teachers College insists tolling is not warranted because there was no "extraordinary" circumstance that prevented Napolitano from asserting his claim under the correct statute during the two years before the Court dismissed the Amended Complaint. *See* Def. Mem. at 9; Reply at 2. This is rich from a defendant that repeatedly failed to notice Napolitano had asserted claims under the wrong statute [ECF Nos. 14, 24, 30]. It is true that the Second Circuit has instructed district courts generally to consider both (1) whether the person seeking equitable tolling acted with reasonable diligence during the period he seeks to have tolled, and (2) whether extraordinary circumstances justify tolling. *Zerilli-Edelglass*, 333 F.3d at 80–81. Following this instruction, courts have concluded that tolling is not appropriate where a plaintiff fails to file a complaint

within the statutory period and fails to show that extraordinary circumstances prevented him from filing his complaint within the statutory period. *See, e.g.*, *Johnson v. St. Barnabas Nursing Home*, 588 F. Supp. 2d 465, 469 (S.D.N.Y. 2008) (no tolling for employment discrimination plaintiff who filed after the 90-day deadline because having an unhelpful attorney and misplacing the right-to-sue letter were not extraordinary circumstances); *Zhongwei Zhou v. Wu*, No. 14-cv-1775 (RJS), 2017 WL 1233994, at *3 (S.D.N.Y. Mar. 31, 2017) (no tolling for FLSA plaintiffs who filed claims after the statute of limitations expired because ignorance and limited financial means are not extraordinary circumstances).

However, as explained above, this is not a case where a plaintiff failed to file a complaint within the statutory period. While plaintiffs generally have to show both reasonable diligence and extraordinary circumstances, both the Supreme Court and the Second Circuit have specifically said that tolling is appropriate when a plaintiff timely files a defective complaint. *See Burnett v. New York Central R. Co.*, 380 U.S. 424 (1965) (plaintiff timely filed complaint in wrong court); *see also American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). It would therefore be inequitable and inappropriate to dismiss Napolitano's ADEA claim as time-barred.

2. <u>Napolitano Alleges a *Prima Facie* Case for Retaliation.</u>

Teachers College next argues the Court should dismiss the Second Amended Complaint for failure to state a claim. Teachers College argues only that Napolitano fails to state a *prima facie* case for retaliation. *See* Def. Mem. at 20. Specifically, it argues that too much time elapsed between Napolitano's complaint about alleged discriminatory statements and his termination "nearly two years later" to infer a causal connection between the protected activity and the adverse employment action. Def. Mem. at 2; *accord id.* at 5, 10; *see id.* at 21. This argument is unavailing.

Napolitano alleges that he was subjected to a series of retaliatory acts that began shortly after he complained about what he believed was illegal age discrimination.

The ADEA makes it unlawful for an employer to retaliate against an employee "because" he "has opposed" age discrimination. *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 303–04 (2d Cir. 2021) (quoting 29 U.S.C. § 623(d)). In order to state a *prima facie* case of retaliation under the ADEA, a plaintiff must allege that (1) he engaged in a protected activity under the ADEA, (2) the defendant knew about the protected activity, (3) the plaintiff experienced an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action. *See Kessler v. Westchester County Department of Social Services*, 461 F.3d 199, 205–06 (2d Cir. 2006).

There is no question that Napolitano alleges he engaged in protected activities under the ADEA in the summer of 2016. "[A]n individual has engaged in a protected activity if he 'has opposed any practice made unlawful by [the ADEA]' or has 'participated *in any manner* in an investigation, proceeding, or litigation'" under the Act. *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989) (emphasis in original) (quoting 29 U.S.C. § 623(d)). Protected activities include a "wide range" of actions, such as informal complaints to supervisors, union grievances, and formal charges with the EEOC. *Id.*; *see Giscombe v. New York City Department of Education*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014); *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 463 (S.D.N.Y. 2013); *Washington v. Garage Management Corp.*, 2012 WL 4336163, at *17 (S.D.N.Y. Sept. 20, 2012). A "plaintiff need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by . . . the ADEA.'" *Kessler*, 461 F.3d 199, 210 (2d Cir. 2006) (alteration omitted) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)).

Napolitano alleges that, after he overhead Joblanski speaking on June 29, 2016, he reported her "discriminatory statements against White based on age" to a union representative. SAC ¶ 18. Specifically, he complained that Joblanski "attempted to force White out because of his age." SAC ¶ 19. The Human Resources Department of Teachers College documented that complaint. SAC ¶ 19. Then, on July 13, 2016, Napolitano met with a representative of the Diversity Department about Joblanski's previously-reported "discriminatory statements" and, during that meeting, he reported that Joblanski had made a "threat of termination" in response to Napolitano's age-discrimination complaint. SAC ¶ 21. On July 25, 2026, Napolitano attended a meeting with representatives from Human Resources where he spoke about the "resistance" of Teachers College "to address Joblanski's discrimination against White." SAC ¶ 23. Under the definition set forth above, all of these are protected activities.

Teachers College argues at length that Napolitano's other, later, alleged complaints were not protected activities. *See* Def. Mem. at 12–16. As explained above, Napolitano complained to Human Resources, and others, that Alford directed him to perform unsafe assignments and falsely accused him of improperly refusing work orders. *See* SAC ¶¶ 32, 33, 36. Unlike complaints about age discrimination, and about retaliation for opposing age discrimination, a complaint about unsafe working conditions is not a protected activity under the ADEA. While Napolitano asserts that he complained about Alford's "retaliation," Napolitano does not clearly allege that he specifically complained that, by giving him unsafe assignments, Alford was retaliating against him for opposing age discrimination. *See* SAC ¶¶ 32, 33, 36, 42, 48; *Boata v. Pfizer, Inc.*, 2013 WL 432585, at *6 (S.D.N.Y. Jan. 31, 2013), *aff'd*, 554 F. App'x 73 (2d Cir. 2014) (the "mere use of [a] word" does not mean that a given complaint is a protected activity).[2]

---

[2] The Court is not ruling that Napolitano never engaged in a protected activity after July 2016. The Court does not need to rule on the legal sufficiency of every allegation in the Second Amended Complaint to resolve this motion. As

10

But all of this is beside the point.  Teachers College is at pains to distinguish complaints that do not constitute protected activities because Teachers College takes the position that too much time elapsed between Napolitano's protected activity "in or about June or July 2016" and his termination in March 2018 to infer a causal connection.  Def. Mem. at 2.  But Napolitano alleges he experienced a series of retaliatory actions beginning on August 1, 2016.  SAC ¶ 25; *see Vega v. Hempstead Union Free School District*, 801 F.3d 72, 92 (2d Cir. 2015); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).

In alleging a *prima facie* case of retaliation, a "plaintiff can indirectly establish a causal connection . . . by showing that the protected activity was closely followed in time by the adverse employment action."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)).  How much time is too much time depends on the circumstances.  *See id*.  "An adverse employment action in a retaliation case includes conduct that is 'harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018) (quoting *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017)).

Teachers College asserts that "the only arguable adverse employment actions at issue are Plaintiff's five-day suspension, Plaintiff's 10-day suspension, and the termination of Plaintiff's employment," the first of which "occurred almost ***14 months*** after Plaintiff's age discrimination complaint."  Def. Mem. at 21 (emphasis in original).  Teachers College is wrong.  As explained

---

explained below, the Court is simply ruling that Napolitano adequately alleges that he engaged in protected activities in July 2016 and that he experienced an adverse employment action in August 2016, as well as, potentially, thereafter. These allegations are enough to defeat the argument that Napolitano fails to state a *prima facie* case of retaliation because, according to Teachers College, too much time elapsed between any alleged protected activity and any alleged adverse employment action.

11

above, Napolitano engaged in protected activity in July 2016, including as late as July 25, 2016. SAC ¶¶ 21, 23.  Napolitano alleges that on August 1, 2016, Joblanski and Alford stripped him of overtime hours they previously agreed he could work.  SAC ¶ 25.

It is clear that a "deprivation of the opportunity to earn overtime" can constitute an adverse employment action.  *Lambert v. Trump International Hotel & Tower*, 304 F. Supp. 3d 405, 419 (S.D.N.Y. 2018); *see Mazyck v. Metropolitan Transportation Authority*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012).  In this case, Napolitano alleges that he previously had an "agreement" with Joblanski and Alford that "Napolitano was permitted to work overtime hours" on a particular project.  SAC ¶ 25.  However, starting shortly after his complaint, Joblanski and Alford allegedly denied Napolitano the opportunity to earn overtime.  SAC ¶ 25; *see also* SAC ¶ 54 (alleging that, in April 2017, a different employee was being given overtime "despite [Napolitano's] seniority").  Such a loss of overtime "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Duplan*, 888 F.3d at 626–27.

Teachers College does not cite authority to the contrary.  In asserting that Napolitano fails to allege any adverse employment action prior to his first suspension in the fall of 2017, Teachers College cites *Henry v. NYC Health & Hospital Corp.*, 18 F. Supp. 3d 396 (S.D.N.Y. 2014).  In that case, in the context of a *discrimination* claim, the district court wrote: "Courts in this Circuit have found that the denial of overtime, where accompanied by a loss in compensation or other material harm, may constitute an adverse employment action."  *Id*. at 406.  Since, "in the context of a discrimination claim," an adverse action must be "a materially adverse change in the terms and conditions of employment," the district court concluded that, in the circumstances of that case, the plaintiff's "vague allegation" about a denial of overtime was insufficient.  *Id*. at 404, 405–406.

12

The Second Circuit has explained that "[i]n the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017). Of course, "petty slights or minor annoyances" are not enough. *Id.* (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)). But depriving an employee of once-promised overtime wages is more than a mere annoyance. It is the kind of conduct that could discourage a reasonable worker from making a complaint. *See id.*; *Duplan*, 888 F.3d at 626–27. Moreover, unlike the allegation in *Henry*, Napolitano's allegation about the August 1, 2016 denial of overtime is not vague. He specifically alleges that Joblanski and Alford had previously agreed that Napolitano could work overtime on a particular project, and then reneged after he complained about age discrimination. SAC ¶ 25. Thus, Napolitano alleges a *prima facie* case of retaliation.

Napolitano further alleges that he experienced "a series of retaliatory acts" over the course of 2016 and 2017, leading up to his suspensions and termination. *Terry*, 336 F.3d at 141; *see* SAC ¶¶ 24, 29, 30, 32, 33, 35, 38, 41, 42, 43–53, 55, 56, 62. Some of the alleged incidents appear to rise to the level of an adverse action. For example, as noted above, Napolitano alleges that Alford intentionally gave him unsafe assignments starting in October 2016. *See, e.g.*, SAC ¶¶ 29, 32, 33, 41. Such conduct "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Duplan*, 888 F.3d at 626–27. Other alleged incidents, however, clearly do not rise to the level of an adverse action. *See* SAC ¶¶ 26, 27. At this stage, given the arguments in the motion to dismiss, the Court does not need to rule on the legal significance of every allegation in the Second Amended Complaint. *See Vega*, 801 F.3d at 92 ("Some of these actions, considered individually, might not amount to much. Taken together, however, they plausibly paint a mosaic of retaliation and an intent to punish [the plaintiff] for complaining of discrimination."). Teachers

College argues only that Napolitano fails to state any *prima facie* case of retaliation, and only because he fails to allege temporal proximity between a protected activity and any adverse employment action. *See* Def. Mem. at 2, 5, 10, 21. For the reasons explained above, the Court cannot possibly dismiss on that basis.

The only other issue Teachers College raises is that this case is "far from the first time that Plaintiff has attempted to challenge his discharge." Def. Mem. Teachers College stresses that the New York State Division of Human Rights rejected Napolitano's claim of retaliation "after a fulsome investigation." Def. Mem. at 2; *see* Def. Mem. at 5–7. The action before the New York State Division of Human Rights does not preclude his federal claim. *Cf. Zoulas v. New York City Department of Education*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019); *Shudtz v. Dean Witter & Co.*, 418 F. Supp. 14, 18 (S.D.N.Y. 1976).

The Court is not suggesting that Napolitano is likely to prevail on his retaliation claim. On a motion to dismiss, it is not the Court's role to predict the ultimate merits of a case. It certainly is not the Court's role to assist a defendant by identifying weaknesses defense counsel overlooks. As the Court explained in its Opinion and Order on the first motion to dismiss, the Court may *sua sponte* dismiss a complaint if it lacks an arguable basis in law. Opinion and Order at 5 (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)). But the Second Amended Complaint does not suffer from the glaring legal defect that was present in the Amended Complaint. As such, this lawsuit will proceed.

### IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss the Second Amended Complaint [ECF No. 47] is DENIED. Teachers College must file an answer by February 27, 2023. The

parties must file a joint letter and proposed Case Management Plan, in accordance with the Court's Individual Rules of Practice, by March 13, 2023.

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 47.

**SO ORDERED.**

Date: February 13, 2023
New York, NY

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**